IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

FREDERICK BERNARD MOORE                                                           PLAINTIFF

v.                                          3:20-cv-00109-JM-JJV

BRENT COX, Administrator,
Greene County Detention Facility, *et al.*                                        DEFENDANTS

**REVISED RECOMMENDED DISPOSITION**

The following Revised Recommended Disposition ("Revised Recommendation") has been sent to United States District Judge James M. Moody, Jr.  Any party may serve and file written objections to this Recommendation.  Objections should be specific and include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

**I.     INTRODUCTION**

Frederick Bernard Moore ("Plaintiff") is a federal prisoner who has filed a *pro se* Amended Complaint and an Addendum seeking relief pursuant to 42 U.S.C. § 1983.  (Docs. 20, 22.) Plaintiff claims that while he was in the Pulaski County Regional Detention Facility ("PCRDF") from May to September of 2019, Defendants Nurse Cody Burkett and Dr. Absalom Tilley failed to provide him with constitutionally adequate medical care for rheumatoid arthritis ("RA").[1]  (*Id*.) Plaintiff brings these claims against Defendants in their official and individual capacities.  (*Id*.)

---

[1] All other claims and Defendants have been previously dismissed without prejudice.  (Docs. 25, 59, 66.)

1

And monetary damages are the only relief he seeks.  (*Id*.)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to judgment as a matter of law.  (Docs. 139, 140, 141.)  On September 30, 2022, I issued a Recommended Disposition deeming Defendants' Statement of Undisputed Facts to be admitted pursuant to Local Rule 56.1(c) because Plaintiff missed the deadline for filing a Response, and I recommended Defendants' Motion for Summary Judgment be granted.  (Doc. 142).  Thereafter, the Honorable James M. Moody, Jr., United States District Judge, found good cause for allowing Plaintiff to file a belated Response, declined the September 30, 2022 Recommended Disposition, and referred the Motion back to me for further consideration.  (Docs. 144, 147, 148.)  After carefully considering Defendants' pleadings (Docs. 139, 140, 141) and Plaintiff's Response (Doc. 145), I recommend Defendants' Motion for Summary Judgment be GRANTED, Plaintiff's inadequate medical care claims against Defendants Tilley and Burkett be DISMISSED with prejudice, and this case be CLOSED.

## II.    SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported

by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.   FACTS

Sometime while Plaintiff was in federal prison, a rheumatologist determined he had RA and prescribed Humira injections to treat that illness.[2] (Doc. 134-4 at 17, 25-33; Doc. 145.) Plaintiff also received Humira while in state prison. (*Id.*)

On May 10, 2019, Plaintiff was transferred from state prison to the PCRDF. (Doc. 139-1 at 3.) During his intake examination, Plaintiff told the nurse about his RA and said a Humira injection had been sent with him to the PCRDF. (Doc. 139-4 at 17, 25-33.) On May 15, 2019, a jail APRN prescribed weekly Humira injections. (*Id*. at 17, 61, 67-68.) On the same day, Nurse Burkett gave Plaintiff his first and only Humira shot while he was in the PCRDF for four months. (*Id*. at 17, 61, 67-68.)

Plaintiff did not receive his next Humira dose because the jail was out of that medication. (Doc. 139-4 at 39-41, 61.) On May 30, 2019, a nurse examined Plaintiff, who reported joint swelling and a pain level of five out of ten. (*Id*.) After noting Plaintiff's swelling was tender to

---

[2] RA is "an autoimmune disorder characterized by chronic inflammation, particularly in the joints." (Doc. 139-1 at 2.) It is a lifelong condition without a cure. (*Id*.) Instead, the symptoms of RA can be medically managed with "nonsteroidal anti-inflammatory drugs (NSAIDS, such as Ibuprofen), corticosteroids, disease-modifying antirheumatic drugs (DMARDs, such as methotrexate or hydroxychloroquine), or biologic agents (such as Humira)." (*Id*.)

3

the touch and that he had a slightly decreased range of motion, the nurse ordered that Plaintiff receive 1000 mg of acetaminophen two times a day for seven days. (*Id.*) She then called Dr. Tilley to inform him Plaintiff needed a Humira refill. (*Id.*) Dr. Tilley discontinued Humira because he determined it was not needed to treat Plaintiff's RA. (*Id.*)

On June 26, 2019, Plaintiff filed a sick call request seeking Humira injections for RA pain. (Doc. 139-3 at 2; Doc. 139-4 at 61-62, 82-83.) On the same day, a nurse examined Plaintiff and reported his request to an APRN. (*Id.*) The APRN denied Humira and instead, prescribed 1000 mg of acetaminophen two times a day for seven days. (*Id.*)

On June 27, 2019, Dr. Tilley examined Plaintiff. (Doc. 139-4 at 51-53.) Dr. Tilley noted Plaintiff was not in acute distress; had no cyanosis, clubbing, swelling, or motor deficits; and demonstrated a good range of motion with a stable gait. (*Id.*) Because he assessed Plaintiff's RA as being stable, Dr. Tilley determined no additional medications, such as Humira, were needed. (*Id.*) This is the last time Dr. Tilley treated Plaintiff's RA. (*Id.*)

In July and early August 2019, Plaintiff filed three sick call requests seeking Humira and reporting RA symptoms. (Doc. 139-3 at 3-5; Doc. 139-4 at 41-62.) Jail nurses told Plaintiff he could not receive Humira because that medication had not been prescribed. (*Id.*) On August 14, 2019, Nurse Burkett examined Plaintiff in response to a fourth sick call request reporting sharp, intermittent RA pain and swelling. (*Id.*) After observing Plaintiff had a full range of motion, Nurse Burkett implemented the APRN's orders that Plaintiff receive acetaminophen twice a day. (*Id.*) However, on August 19, 2019, Plaintiff refused to take that medication when Nurse Burkett tried to give it to him. (Doc. 139-3 at 6-7.) That was the last day Nurse Burkett treated Plaintiff's RA.

In August 2019, jail nurses examined Plaintiff three more times. (Doc. 139-3 at 7-8; Doc.

139-4 at 41-49, 63-64.)  During those encounters, Plaintiff reported his pain level was four or five out of ten, and he exhibited a normal or slightly decreased range of motion.  (*Id*.)  During the first two exams, the nurses continued Plaintiff's prescription for acetaminophen, even though he reported that medication was ineffective.  (*Id*.)  During the third exam, the APRN changed Plaintiff's prescription to 400 mg of ibuprofen twice a day.  (*Id.*)  On September 4, 2019, the APRN examined Plaintiff, noted his gait was stable, ordered labs which later revealed his RA was stable, and changed his RA medications to prednisone, naproxen, and acetaminophen.  (Doc. 139-1 at 4; Doc. 139-4 at 53-54, 64-66; Doc. 139-6.)  On September 9, 2019, Plaintiff refused to be examined or take his prescribed RA medications.  (Doc. 139-3 at 11; Doc. 139-4 at 49.)  And on September 20, 2019, he left the PCRDF.  (Doc. 139-5.)

IV.    DISCUSSION

    A.    **Personal Capacity Claims**

"The Eighth Amendment requires state prison officials to provide inmates with needed medical care."  *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016).  To defeat summary judgment and proceed to trial on his Eighth Amendment inadequate medical care claim, Plaintiff must have evidence: (1) he had an objectively serious medical need; and (2) Dr. Tilley and Nurse Burkett subjectively knew of, but deliberately disregarded, that serious medical need.  *See Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021); *Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018).

In his Response, Plaintiff strongly argues his RA constitutes an objectively serious medical need. (Doc. 145.)  As explained in my prior Recommendation (Doc. 142), I agree.  *See De Rossitte v. Correct Care Sols., LLC.*, 22 F.4th 796, 802 (8th Cir. 2022) (a medical need is objectively serious if it has been "diagnosed by a physician as requiring treatment").

Thus, this case turns on the second element of deliberate indifference, which is a high

5

threshold that goes well beyond negligence or gross negligence. *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010). To establish deliberate indifference, there must be evidence prison officials "recognized that a substantial risk of harm existed <u>and</u> knew that their conduct was inappropriate in light of that risk." *Shipp,* 9 F.4th at 703 (emphasis in the original). This level of mental culpability is "akin to criminal recklessness." *Id*.

Plaintiff alleges Dr. Tilley and Nurse Burkett were deliberately indifferent in May 2019 when they stopped using Humira, which he had received in state and federal custody, to treat his RA. (Doc. 145.) In his affidavit, Dr. Tilley explains Humira is contraindicated in the correctional setting because it depresses the immune system, and thus, should only be given when a prisoner is in acute distress. (Doc. 139-1.) Because Plaintiff's RA condition was stable and his pain was not acute, Dr. Tilley determined, in his professional medical opinion, Humira was not medically necessary to treat Plaintiff's RA. (*Id*.) And he avers the medications Plaintiff received while at the PCRDF were "medically appropriate and adequate to treat his RA condition." (*Id*. at 4.)

"In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that he did not feel he received adequate treatment." *Cejvanovic v. Ludwick*, 923 F.3d 503, 508 (8th Cir. 2019); *Dulany v. Carnahan,* 132 F.3d 1234, 1240 (8th Cir. 1997). Plaintiff has not offered any <u>evidence</u> to contradict Dr. Tilley's professional medical opinion, which I note is consistent with the APRN's decision to treat Plaintiff's RA with acetaminophen and later, medications other than Humira. *See Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019) (pretrial detainee's "disagreement with [jail medical providers'] decision to offer him over-the-counter pain medications, rather than prescription medications, does not

6

constitute deliberate indifference").

Plaintiff says Dr. Tilley and Nurse Burkett canceled his Humira prescription and tried to treat his RA with cheaper medications pursuant to their employer's "Cost Containment Plan." (Doc. 145 at 4-5.) But at the summary judgment stage, Plaintiff "must discard the shielding cloak of formal allegations and meet proof with proof;" he must "substantiate [his] allegations with sufficient probative evidence." *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010); *Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010) (emphasis added). Although he has had the opportunity to do so, Plaintiff has not offered any evidence to substantiate his belief Dr. Tilley and Nurse Burkett changed his medications for impermissible cost saving reasons. Nor has he presented any evidence demonstrating either of them knew a "substantial risk of harm existed" and "that their conduct was inappropriate in light of that risk" when they changed his RA medications to what they believed, in their unrefuted medical opinions, to be appropriate medical care for his condition. *See Shipp*, 9 F.4th at 703.

Further, there is no evidence here Dr. Tilley or Nurse Burkett ignored an acute or escalating situation during the limited time that they were personally involved in Plaintiff's RA treatment.[3] To the contrary, the undisputed medical evidence demonstrates Plaintiff's RA remained stable, and his medications were later changed, by non-parties, in response to his subjective complaints of pain. Finally, Plaintiff's failure to regularly take the prescribed RA medications does not help his cause. *Beck v. Skon*, 253 F.3d 330, 333-34 (8th Cir. 2001); *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). For these reasons, I conclude there is no evidence

---

[3] As previously mentioned, Dr. Tilley was personally involved in Plaintiff's RA treatment for approximately one month (from May 30, 2019 to June 27, 2019). (Doc. 139-1; Doc. 139-4.) And Nurse Burkett's involvement was limited to carrying out Dr. Tilley's and the APRN's prescription orders for approximately three months (from May 15, 2019 to August 19, 2019). Significantly, there is no evidence Nurse Burkett had authority to change Plaintiff's prescriptions.

from which a jury could find Dr. Tilley or Nurse Burkett acted with deliberate indifference during the limited time that they were treating Plaintiff's RA.  *See Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021) (to defeat summary judgment and proceed to trial, prisoners must clear a "substantial evidentiary threshold" to show medical providers acted with deliberate indifference); *Johnson,* 929 F.3d at 576 (8th Cir. 2019) (same).

That being said, I am not unsympathetic to the pain and discomfort Plaintiff experienced as a result of having RA and his frustration with not getting the same medication he received while in state and federal custody.  (Doc. 145.)  But prisoners are not constitutionally entitled to receive the same medical treatment they received at other facilities or the medical care of their choosing.  *Barr*, 909 F.3d at 921-22; *see also Dulany* 132 F.3d at ("inmates have no constitutional right to receive a particular or requested course of treatment").  Instead, prison medical providers are free to exercise their independent medical judgment.  *Barr*, 909 F.3d at 921–22; *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008).  And a disagreement between medical professionals about the appropriate treatment does not rise to the level of a constitutional violation.  *Long v. Nix,* 86 F.3d 761, 765-66 (8th Cir. 1996); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988).  As explained by the Eighth Circuit, the "existence of a possible alternate course of treatment, which may or may not have been successful, is not sufficient to raise an inference of deliberate indifference where the prison officials acted reasonably but ultimately failed to avert the harm." *Dulany,* 132 F.3d at 1241.  Accordingly, I conclude Defendants Tilley and Burkett are entitled to summary judgment on the inadequate medical care claims Plaintiff has raised against them in their personal capacities.

    **B.**    **Official Capacity Claims**

In the Amended Complaint and Addendum, Plaintiff claims the PCRDF and/or Turn Key

Health Clinics, LLC[4] had an unconstitutional policy or practice of refusing to prescribe Humira because it was too expensive. *See Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019) (to proceed with an official capacity claim against county officials, there must be evidence the constitutional violation was caused by an official policy, custom, or practice); *Harris v. Corizon, LLC*, No. 20-3094, 2022 WL 1448209, at *3 (8th Cir. May 9, 2022) (same law applies to private corporations acting under color of law); *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (same).

The short answer here is the official capacity claim fails as a matter of law because there is no evidence of an underlying constitutional violation. *Rusness v. Becker Cnty., Minnesota*, 31 F.4th 606, 617 (8th Cir. 2022) ("the existence of a constitutional violation is a threshold issue for" a policy or practice claim "to move forward"). The longer answer is found in Dr. Tilley's affidavit. Specifically, Dr. Tilley, who is also the PCRDF Medical Director, says: "Neither I nor any other Turn Key medical provider makes medical decision-making based on the cost of the medication; that is, if a prescription is medically necessary, we will prescribe it regardless of cost." (Doc. 139-1 at 3.) Plaintiff has not offered any contrary, admissible evidence. *See Smith v. Kilgore*, 926 F.3d 479, 485 (8th Cir. 2019) (the trial "court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial"). Instead, he says Turn Key has been sued numerous times in the Eighth and Tenth Circuits. (Doc. 145 at 6.) But the existence of prior lawsuits, which is most likely inadmissible, does not establish Turn Key provided constitutionally adequate medical care to anyone. More importantly, to proceed past summary judgment, Plaintiff must have admissible evidence <u>he</u> received constitutionally inadequate medical care as a result of an official policy, custom, or

---

[4] Turn Key, LLC is a private company that provides medical services to the PCRDF. (Doc. 139-1; Doc. 139-2).

practice. *See Hodak v. City of St. Peters,* 535 F.3d 899, 904 (8th Cir. 2008) ("As a general rule, a plaintiff may only assert his own injury in fact and cannot rest his claim to relief on the legal rights or interests of third parties"). As previously explained, he does not have any such evidence. For these reasons, I conclude Dr. Tilley and Nurse Burkett are also entitled to summary judgment on the official capacity claims.

## V.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (Doc. 139) be GRANTED, Plaintiff's inadequate medical care claims against Defendants Dr. Tilley and Nurse Burkett be DISMISSED with prejudice, and this case be CLOSED.

2. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this Revised Recommendation and the accompanying Judgment would not be taken in good faith.

Dated this 1st day of November 2022.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE